**In re GENERAL AGENTS INSUR-
ANCE COMPANY OF AMER-
ICA, INC., Relator.**

No. 14–07–00771–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

May 15, 2008.

672

Michelle Elaine Robberson, R. Brent Cooper, Dallas, for appellants.

Elizabeth B. Hawkins, Benjamin L. Hall, III, Peter Michael Kelly, Houston, for appellees.

Panel consists of Chief Justice HEDGES and Justices ANDERSON and SEYMORE.

## SUBSTITUTE OPINION

ADELE HEDGES, Chief Justice.

We withdraw our opinion dated January 17, 2008, and issue the following substitute opinion.

In this original proceeding, relator, General Agents Insurance Company of America, Inc. ("Gainsco"), seeks a writ of mandamus ordering respondent, the Honorable Elizabeth Ray, to: (1) vacate her order denying Gainsco's motion to sever the interlocutory summary judgment regarding the validity of the policy buy-back agreement; (2) compel respondent to sever the interlocutory summary judgment to render it final and appealable; and (3) abate the proceedings. We conditionally grant the writ.

## Background

Real parties in interest, El Naggar Fine Art Furniture, Inc. and Ahmed El Naggar (collectively "El Naggar"), brought this suit pursuant to an assignment of claims from Gainsco's former insured, Traxel Construction, Inc., and its owner, Fred Bell, alleging that Gainsco's Comprehensive General Liability ("CGL") policy provided coverage for El Naggar's claims, and Gainsco breached its insurance contract with Traxel by failing to provide coverage for a $3.6 million judgment rendered against Traxel and Bell in the underlying suit, *Ahmed El Naggar v. American Steel Building, Co. et al.*, Cause No. 2001–51294 ("underlying suit"). In the underlying suit, El Naggar alleged defective construction by Traxel and others.[1]

Gainsco defended Traxel under a reservation of rights set out in two letters. The underlying suit went to trial on October 4, 2004, but ended in a mistrial on October 5, 2004. The next day, October 6, 2004, Gainsco and Traxel executed a policy buyback agreement wherein Gainsco paid Traxel $50,000 in exchange for Traxel's transfer to Gainsco of all its interests in the CGL policy and release of Gainsco from all claims, demands, and causes of action arising out of the CGL policy. On January 24, 2005, the second trial in the underlying suit commenced and, on August 8, 2005, the trial court entered a final judgment in favor El Naggar in the amount of $3.6 million against Traxel.

On February 4, 2005, El Naggar filed the current coverage suit against Gainsco, seeking the $3.6 million judgment from the underlying suit. El Naggar brought the

1. This is the second original proceeding to arise out of this insurance coverage suit. *See In re Gen. Agents Ins. Co. of Am., Inc.,* 224 S.W.3d 806 (Tex.App.-Houston [14th Dist.] 2007, orig. proceeding). In the previous proceeding, Gainsco requested that we compel respondent to vacate and set aside her order compelling production of Gainsco's insurance claims filed on the underlying lawsuit against Traxel. We conditionally granted the writ in part, and denied it in part.

following claims against Gainsco: breach of contract, breach of the duty of good faith and fair dealing, tortious interference, civil conspiracy, and violations of the DTPA, the Texas Insurance Code, and the Texas Uniform Fraudulent Transfer Act. El Naggar also filed a declaratory judgment requesting a declaration that the policy buy-back agreement is unconscionable and violates the Texas Insurance Code, Texas Uniform Fraudulent Transfer Act, and public policy.

The parties filed cross-motions for summary judgment on the validity of the policy buy-back agreement.[2] On September 11, 2006, the trial court granted El Naggar's motion for summary judgment and declared the buy-back agreement between Traxel and Gainsco void as against public policy. On June 13, 2007, Gainsco filed a motion to sever and abate the interlocutory summary judgment ruling so that the judgment would become final and appealable. On July 10, 2007, respondent denied the motion.

### Standard of Review

■ In order to obtain mandamus relief, the relator must show that the trial court clearly abused its discretion and relator has no adequate remedy by appeal. *In re Sw. Bell Tele. Co., L.P.*, 226 S.W.3d 400, 403 (Tex.2007) (orig. proceeding). The trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to constitute a clear and prejudicial error of law. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992) (orig. proceeding).

### Severance of Claims

Gainsco complains that respondent abused her discretion in refusing to grant the severance because validity of the policy buy-back agreement is a predicate to the viability of El Naggar's remaining claims. It posits that if the policy buy-back agreement is found to be valid and enforceable, the mutual rescission of the CGL policy and Traxel's release of all claims arising out of the policy will bar any claims El Naggar could bring pursuant to the assignment he received from Traxel.

■ Rule 41 of the Texas Rules of Civil Procedure governs the severance of claims. *See* Tex.R. Civ. P. 41 ("Any claim against a party may be severed and proceeded with separately."). A claim may be severed if (1) the controversy involves more than one cause of action, (2) the severed claim could be the proper subject of a lawsuit if independently asserted, and (3) the severed claim is not so interwoven with the remaining action that both involve the same facts and issues. *Guar. Fed. Savs. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex.1990). The controlling reasons for a severance are to do justice, avoid prejudice, and further convenience. *Id.* The trial court has broad discretion in the severance of causes of action. *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 734 (Tex.1984); *Black v. Smith*, 956 S.W.2d 72, 75 (Tex.App.-Houston [14th Dist.] 1997, orig. proceeding).

■ Although trial courts are given broad discretion in determining whether to grant severance, that discretion is not unlimited. *Black*, 956 S.W.2d at 75; *United States Fire Ins. Co. v. Millard*, 847 S.W.2d 668, 671 (Tex.App.-Houston [1st Dist.] 1993, orig. proceeding). The trial court has a duty to order severance where the

---

2. In *Ranger Insurance Co. v. Ward*, the Texarkana Court of Appeals, held that an agreement to cancel an insurance policy after notice of a loss covered by the policy was void as contrary to public policy. 107 S.W.3d 820, 829–30 (Tex.App.-Texarkana 2003, pet. denied).

facts and circumstances unquestionably require severance to prevent "manifest injustice," where no facts or circumstances support a contrary conclusion, and where there will be no prejudice suffered. *Black,* 956 S.W.2d at 75 (citing *Womack v. Berry,* 156 Tex. 44, 291 S.W.2d 677, 683 (1956)). Under such circumstances, the refusal to order a severance constitutes a violation of a plain legal duty, even though it is often termed a clear abuse of discretion. *Black,* 956 S.W.2d at 75 (citing *Womack,* 291 S.W.2d at 683).

■ First, we examine whether the validity of the buy-back agreement is an issue that is appropriate for severance. *See In re Ben E. Keith Co.,* 198 S.W.3d 844, 850 (Tex.App.-Fort Worth 2006, orig. proceeding). El Naggar, who has brought several causes of action, does not dispute that Gainsco has satisfied the first requirement for severance. El Naggar disputes that Gainsco has met the second requirement because the validity of the buy-back agreement is not an independent claim. Instead, because it is an element or operative fact in his other claims, no final judgment could be issued on the finding. El Naggar contends, therefore, that if respondent had granted the motion to sever and abate, an appellate court likely would have dismissed the appeal for want of jurisdiction. We disagree.

A person interested under a contract, whose rights are affected by the contract, may seek determination of any question of construction or validity arising under the instrument and obtain a declaration of rights. Tex. Civ. Prac. & Rem.Code Ann. § 37.004(a) (Vernon 1997); *see also Bright v. Addison,* 171 S.W.3d 588, 606 (Tex.App.-Dallas 2005, pet. dism'd) (explaining that the purpose of a declaratory judgment is to settle and afford relief from uncertainty with respect to rights, status, and legal relations). A court can declare the rights and status of the parties to a contract "whether or not further relief is or could be claimed." Tex. Civ. Prac. & Rem.Code Ann. § 37.003(a) (Vernon 1997).

■ Gainsco points out that if the validity of the buy-back agreement were merely an element of El Naggar's other claims, respondent could not have granted summary judgment in favor of El Naggar. We agree. When the plaintiff moves for summary judgment, he must conclusively prove each element of its claim as a matter of law. *Geiselman v. Cramer Fin. Group, Inc.,* 965 S.W.2d 532, 535 (Tex.App.-Houston [14th Dist.] 1997, no writ); *see also* Tex.R. Civ. P. 166a(a) ("A party seeking ... to obtain a declaratory judgment may, at any time after the adverse party has appeared or answered, move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof."). We conclude that a declaratory judgment determining the existence or validity of a contract is the proper subject of a lawsuit if independently asserted. Therefore, the second requirement for the granting of a severance has been satisfied.

■ The parties dispute whether the third requirement for severance has been met. The severed causes of action should not be so interwoven as to require the introduction of evidence on the same facts and issues. *Coal. of Cities for Affordable Util. Rates v. Pub. Util. Comm'n of Tex.,* 798 S.W.2d 560, 564 (Tex.1990). Gainsco argues such evidence will not be relevant to El Naggar's remaining claims.

El Naggar cites the Texas Supreme Court's opinion in *Liberty Nat. Fire Ins. Co. v. Akin* as controlling authority in this proceeding. 927 S.W.2d 627 (Tex.1996) (orig. proceeding). In *Akin,* the supreme court denied Liberty's petition for writ of mandamus requesting that the trial court be compelled to sever the plaintiff's breach

of contract claim from the bad faith insurance claim. *Id.* at 628. The court held that such claims were interwoven, with most evidence admissible on both claims. *Id.* at 630. Any prejudicial effect could be ameliorated by appropriate limiting instructions. *Id.*

Relying on *Akin*, El Naggar asserts that his claims are interwoven because his civil conspiracy, fraudulent conveyance, tortious interference with contract, DTPA, and Insurance Code claims all include evidence relating to Gainsco's (1) representation about coverage at the inception of the Traxel construction contract and (2) negotiations to buy back the coverage. El Naggar further contends that even if there was no insurance policy, whether Gainsco's conduct conformed to reasonable insurance practices would still be litigated because Gainsco represented to him that there was coverage by providing proof of insurance in a certificate of insurance. Failing to see the applicability of the *Akin* holding, we are unpersuaded by these arguments. We agree with Gainsco that there are no facts to be determined on the public policy issue. Therefore, because the public policy issue is not factually interwoven with El Naggar's other claims, Gainsco has met the third requirement for severance. Having determined that the claim is severable, we now examine whether the trial court's refusal to order a severance here amounts to an abuse of discretion.

■ This case illustrates the fundamental rationale for severance. The controlling reasons for severance are to do justice, to avoid prejudice, and to promote convenience. *Guar. Fed. Savs. Bank*, 793 S.W.2d at 658. In addition, the facts and circumstances of this case compel a sever-

ance in order to prevent manifest injustice to Gainsco. Armed with the interlocutory summary judgment, El Naggar will be able to argue to the jury that the judgment is "conclusive evidence that Gainsco made an illegal contract, committed fraud, conspired with its insured, acted unconscionably, and violated various Texas statutes and Texas public policy."[3] Gainsco's only defense would be to ask the jury to disregard the order declaring the buy-back agreement void. It is improper for a jury to decide a question of law.[4]

In *Turboff v. Gertner, Aron & Ledet Investments*, we addressed a similar problem:

> The granting of the partial summary judgment, which was then relied on by [the plaintiff] to preclude introduction of evidence regarding the parties' intent to contract, severely prejudiced the defendants' rights to develop fully their defense to the fraud allegations. Further prejudice was suffered by them when, in response to their attempts to introduce such evidence of their intent, the trial court permitted [the plaintiff] to introduce the interlocutory order of partial summary judgment. Using a blown-up poster of the order, counsel for [the plaintiff] admonished the jury that [the defendant] was "asking them to overrule the judge" and suggested that once the summary judgment was granted, [the defendant] should then have performed under the contract. Even had the summary judgment been properly granted, the prejudicial effect on the jury of such admonishments is obvious.

763 S.W.2d 827, 832 (Tex.App.-Houston [14th Dist.] 1988, writ denied).

---

**3.** According to Gainsco, El Naggar's counsel has already indicated that he will seek to have this evidence included.

**4.** Gainsco also maintains that it will suffer prejudice if respondent excludes evidence regarding the use and acceptance of policy buy-back agreements in the insurance industry.

We agree that Gainsco will be prejudiced because it will not be able to fully develop its defenses. Gainsco may find itself arguing to jurors that they should, in effect, overrule respondent, to whom all attorneys, parties, court staff, and jurors must defer.

Our review of the record also leads us to conclude that no facts or circumstances support a contrary conclusion, and that El Naggar will not be prejudiced by allowing a severance so that Gainsco may appeal the partial summary judgment. While we do not decide the propriety of the partial summary judgment in this proceeding, the validity of the buy-back agreement constitutes a substantial portion of Gainsco's defenses to the remaining claims asserted by El Naggar in this lawsuit. Respondent's summary judgment appears destined for appeal, and El Naggar—whose claims are also predicated on the alleged *invalidity* of the buy-back agreement—will not be prejudiced by allowing Gainsco to appeal an issue that is crucial to both parties' arguments at trial.

Because all requirements have been met to sever the declaratory judgment and lack of a severance in this case will cause manifest injustice to Gainsco, we conclude that respondent abused her discretion in denying Gainsco's motion to sever the interlocutory summary judgment to render it final and appealable and to abate the proceedings.

### Verification of Motion to Abate

■■■ El Naggar also argues that respondent did not abuse her discretion in denying Gainsco's motion to sever and abate because Gainsco did not verify its portion of the motion requesting an abatement. Pleas in abatement are not included in the list of pleas which must be verified under Rule 93 of the Texas Rules of Civil Procedure. Tex.R. Civ. Proc. 93.

Rule 93 provides that "[a] pleading setting up any of the following matters, unless the truth of such matters appear of record, shall be verified by affidavit." *Id.* "A motion to abate is used to challenge the plaintiff's pleadings by alleging facts outside the pleadings that prove the suit cannot go forward in its present condition." *Morgan v. City of Alvin,* 175 S.W.3d 408, 421 (Tex. App.-Houston [1st Dist.] 2004, no pet.). Because Gainsco's motion to abate is not based on facts outside the record requiring verification, Gainsco was not required to verify its motion to abate.

### Timeliness of Motion to Sever and Abate

■■■ El Naggar contends that Gainsco's motion to sever and abate was untimely because it waited nine months before it filed its motion, as well as this subsequent petition. On October 23, 2006, Gainsco filed a petition for writ of mandamus in this court regarding a discovery dispute. On November 9, 2006, we ordered the trial court proceedings stayed pending a ruling on the petition or until further orders from this court. On May 15, 2007, we issued our opinion, granting the petition in part, and denying in part. *See Gen. Agents Ins. Co. of Am., Inc.,* 224 S.W.3d at 810. On May 24, 2007, we lifted our stay. On June 13, 2007, Gainsco filed its motion to sever and abate. On July 9, 2007, El Naggar filed his response, and respondent held a hearing on the motion. On July 10, 2007, respondent denied the motion. Gainsco states in its current petition that respondent's order was not mailed, faxed, or otherwise served on the parties and was not immediately posted on the trial court's online docket. Beginning in mid-July 2007, Gainsco's counsel checked the Harris County courts' website, looking for an order on the motion to sever and abate. On August 27, 2007, Gainsco's

counsel learned of respondent's July 10, 2007 order denying the motion to sever and abate. El Naggar does not dispute that Gainsco's counsel did not learn of the denial of its motion to sever and abate until August 27, 2007. Given the history of this case, we do not find Gainsco's motion or petition untimely.

### No Adequate Remedy By Appeal

 Gainsco contends that it has no adequate remedy by appeal. To determine if a party has an adequate remedy by appeal, we ask whether "any benefits to mandamus review are outweighed by the detriments." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex.2004) (orig. proceeding). Gainsco contends that its potential inability to fully develop its defenses renders appeal an inadequate remedy. We agree that Gainsco will lose a substantial right in not being able to fully develop its defenses to El Naggar's claims. *Walker*, 827 S.W.2d at 842 (explaining appeal is not an adequate remedy when parties stand to lose their substantial rights). Moreover, jury confusion will likely result in findings on liability because the jury may perceive that it cannot contradict respondent's summary judgment ruling on the issue of the buy-back agreement. The injustice imposed on Gainsco cannot be remedied on appeal. *See Prudential Ins. Co. of Am.*, 148 S.W.3d at 136; *see also Womack*, 291 S.W.2d at 683 (holding that mandamus is warranted if the injustice resulting from the refusal to sever cannot be remedied on appeal).

### Sanctions

El Naggar requests sanctions because Gainsco allegedly failed to cite controlling authority in its petition, and such omission could not have been accidental. El Naggar has cited no authority in the Texas Rules of Appellate Procedure or in case law to support his claim for sanctions. *See* Tex.R.App. P. 38.1(h). In light of our granting Gainsco's requested relief, sanctions are not appropriate in this proceeding.

### Conclusion

We conditionally grant the petition for a writ of mandamus and direct the trial court to (1) vacate its order denying Gainsco's motion to sever and abate and (2) grant such motion, severing the interlocutory summary judgment order on the validity of the buy-back agreement from El Naggar's other claims and abating the proceedings. The writ will issue only if the trial court fails to act in accordance with this opinion. We further lift our order to stay the trial court proceedings entered on December 11, 2007.